UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FELIX COTTO,
    -Plaintiff Pro Se

-v-                                                         CIVIL 3:02 CV 1562 (TPS)

COMMISSIONER JOHN ARMSTRONG,
HECTOR RODRIGUEZ,
DR. JACH D. MALEH,
MR. COOPER,
JOHN DOE,
JANE DOE,
    -Defendants

## RULING ON MOTION FOR SUMMARY JUDGMENT

This is an action by a state prisoner under 42 U.S.C. §1983, seeking money damages and equitable relief against six defendants who are sued in their individual and official capacities. It is before the undersigned pursuant to 28 U.S. C. §636(c).

The complaint alleges that the defendants violated plaintiff's Eighth Amendment rights while he was an inmate at the Connecticut Correctional Institution at Cheshire ("CCI Cheshire") by denying him medical care and by being deliberately indifferent to his medical condition. The defendants have moved for summary judgment. For the reasons that follow, the motion for summary judgment is **GRANTED in part and DENIED in part without prejudice.** Fed. R. Civ.

P. 56(b).

## I. Armstrong and Rodriguez

The defendant John Armstrong is the former Commissioner of Corrections for the State of Connecticut. He was the Commissioner at the time of the events at issue. At the relevant time Hector Rodriguez was the Warden of CCI Cheshire. The complaint is devoid of any allegations of personal involvement of Armstrong or Rodriguez in the events giving rise to this suit.

An action under 42 U.S.C. §1983 cannot be maintained against a defendant unless that individual was personally involved in the transaction giving rise to the lawsuit. McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978). Personal involvement requires actual participation in the alleged deprivation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). It is not enough that former Commissioner Armstrong or Warden Rodriguez may have had general supervisory authority at the time, for there is no respondeat superior liability under 42 U.S.C. §1983. Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 692-95 (1978). Nor may one be sued successfully under §1983 simply because one occupies an exalted position in the prison hierarchy. Because there is no evidence, or even allegations, of their personal involvement, summary judgment is granted as to Armstrong and Rodriquez.

## II. John Doe and Jane Doe

The plaintiff has sued two unknown individuals, allegedly members of CCI Cheshire's medical staff, identifying them only as John Doe and Jane Doe. The Attorney General has moved for summary judgment in favor of these defendants on grounds that "John Doe" defendants are not expressly permitted under state law and procedure.

Whether The Connecticut Practice Book, or state statute, permits state lawsuits to proceed against John Doe defendants is not determinative. Federal courts follow the Federal Rules of Civil Procedure, not the Connecticut Practice Book, which governs state court procedure. In federal actions "the use of fictitious names for defendants has been routinely approved even without discussion." Maclin v. Paulson, 627 F.2d 87 (7th Cir. 1980), citing Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

Typically, after a John Doe lawsuit is commenced, a plaintiff will learn the true identity of the unknown defendant through discovery and will thereupon file an amended complaint which identifies the previously unknown defendant. The amended complaint must then be served on the defendant.

In this case, the plaintiff's complaint has never been served on either of the Doe defendants. Because they have not been served

in their individual capacities, the court has not yet acquired in personam jurisdiction over them. Unless in personam jurisdiction is obtained, plaintiff's damages claims will eventually have to be dismissed as to the Doe defendants in their individual capacities. Fed. R. Civ. P. 12(b)(2). On the present record summary judgment as to the Doe defendants is premature.

Where summary judgment or dismissal under Fed. R. Civ. P. 12(b)(2), (4), and (5) is sought in circumstances such as this, the court may order the moving party to disclose the identity of the John Doe defendant, e.g., S. Methodist Univ. Ass'n v. Wynne and Jaffe, 599 F.2d 707, 710, 712-13 (5th Cir. 1979), or may permit the plaintiff to obtain his identity through limited discovery. Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979); Gordon v. Leeke 574 F.2d 1147, 1152-53 (4th Cir 1978), cert. denied, 439 U.S. 970 (1979).

On this record, the motion for summary judgment as to John Doe and Jane Doe is denied without prejudice. The state is ordered to disclose the identity of the Doe defendants to the plaintiff and the court within 30 days of this date. If the state certifies that it does not know the identity of the two individuals, the court will consider permitting plaintiff to conduct limited discovery to learn their identities, thus enabling him to prepare an amended complaint naming them, and causing the amended complaint to be

served personally upon them.

### III. Jach D. Maleh, M.D.

The defendant Jach D. Maleh, M.D., has been sued in his official and individuals capacities for money damages and injunctive relief. On August 9, 2005, the state filed a suggestion of death on the record, advising the court and plaintiff of Dr. Maleh's death. Fed. R. Civ. P. 25(a). The death of Dr. Maleh moots plaintiff's claim of injunctive relief against him. Summers v. Weiderhold, No. 96CV1291, 1998 U.S. Dist. LEXIS 4496 *2 n.2 (N.D.N.Y. February 24, 1998). The claims for injunctive relief against Dr. Maleh are, therefore, dismissed. The plaintiff's claims for money damages against Dr. Maleh in his official capacity are also dismissed, since the Eleventh Amendment precludes federal courts from entertaining suits for money damages against unconsenting states, and state employees in their official capacities. Kentucky v. Graham, 473 U.S. 159 (1985).

The money damages claims against the defendant Maleh in his individual capacity are not so easily disposed of. Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, however, a plaintiff must show "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs". Id. at 106. A prisoner must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary harm by prison personnel. Id. at 104-05.

Mere negligence will not support a §1983 claim of intentional indifference; the conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F.Supp. 230, 232 (S.D.N.Y. 1988)(citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970)). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

Further, the civil rights statutes were not meant to redress medical malpractice claims that can be adequately resolved under state tort law. Tomarkin, 534 F.Supp. at 1230-31. Inmates do not have a legal right to select the medical treatment of their choice. Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). Mere disagreement with prison officials about what constitutes appropriate medical treatment does not state a claim cognizable under the Eighth Amendment. Chance v. Armstrong, 143 F.3d 698, 703

(2d Cir. 1998).

It may ultimately turn out that plaintiff, at best, has nothing more than a run-of-the-mill medical malpractice claim which, under clearly settled law, cannot be maintained under §1983 in federal court. But on this record, construed generously, the *verified* complaint alleges that Maleh knew the plaintiff had diabetes, yet deliberately did nothing to treat him for it until the plaintiff was found unconscious in his cell on February 27, 2002.

The state contends that "plaintiff's claim that he was a diabetic prior to February 27, 2001 [sic],[1] simply is not supported by the medical evidence." (Memorandum, Dkt. 40 at 8 ¶1). The state also points to numerous medical records indicating that plaintiff received adequate medical treatment for his diabetes after February 27, 2002. On the present record, which still is uncomfortably slim due to a lack of discovery by either side, the court cannot grant summary judgment in favor of Maleh without impermissibly drawing

---

[1] The defendants' Local Rule 56(c) Statement misdescribes 2002 events and records as being from 2001. See Dkt. 41. If the defendants choose to move again for summary judgment on a more developed record, they should submit a new Statement of Undisputed Facts with correct dates.

inferences in favor of the defendants.[2]

In ruling on a motion for summary judgment, the court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party." Graham v. Long Island R.R., 230 F.2d 34, 38 (2d Cir. 2000). Further, where a party is proceeding pro se, the "court[] must construe pro se pleadings broadly, and interpret them to 'raise the strongest arguments that they suggest.'" Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)(quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). As the record now stands, there are allegations in a verified complaint that Maleh, Cooper, and the two Does knew[3] plaintiff was a diabetic and was

---

[2] The same seems true on this record as to Mr. Cooper, who appears to have been sued not because he was a supervisor, but because he was a member of the medical staff who, according to the verified complaint, allegedly failed to schedule the plaintiff for a medical examination. Similarly, the defendants Doe are alleged to have known plaintiff was seriously ill, inferentially with diabetes, yet to have refused to get plaintiff attention for his diabetes for almost six weeks.

[3] The standard form, pro se complaint concludes with a declaration under penalty of perjury, 18 U.S.C. §1621; 28 U.S.C. §1746, that its allegations are true and correct. Thus, the complaint has the effect of an affidavit. Regrettably, the complaint does not disclose precisely *how* the defendants supposedly knew of plaintiff's diabetes prior to February 27, 2005. If defendants conduct discovery prior to filing their next motion for summary judgment, they should explore, probably at a deposition, what foundation, if any, there is for plaintiff's verified allegations that, prior to February 27, 2002, that Maleh, Cooper, and the Does "knew" of plaintiff's diabetes.

seriously ill, yet between January 1, 2002 and February 27, 2002, they did nothing to treat his diabetes. So far, all the state has produced are medical records which show that plaintiff neither complained of, nor was treated for, diabetes before February 27, 2002. The records do not refute plaintiff's sworn allegations that he informed the defendants he was diabetic in early January 2002. Thus, defendants' evidence is not necessarily inconsistent with plaintiff's allegations.

If the only issue before the court were whether the defendants were indifferent to plaintiff's medical needs, or failed to give him adequate medical treatment *after* February 27, 2002, Dr. Maleh and the remaining defendants may well be entitled to summary judgment, both on the merits and pursuant to a qualified immunity defense. The law is clear that §1983 may not be used as a vehicle for inmates to second guess medical personnel or require them to follow the dictates of prisoners in matters of diagnosis or treatment. However, on the present record, construing the pro se plaintiff's papers generously, plaintiff's complaint seems to involve more than that.

Defendants should consider conducting limited discovery in an effort to dispose of this entire case, if possible, by a renewed motion for summary judgment. For example, a brief deposition of the plaintiff could reveal what evidentiary support, if any, there

is for his contention that Maleh, Cooper, and the Does knew of plaintiff's diabetes before February 27, 2002. Possibly even a simple contention interrogatory could unearth this information. Conceivably, the defendants would then be able to show that summary judgment is appropriate *on the merits* for the period from early January to February 27, 2002, without even having to address the defense of qualified immunity. Of course they may renew their qualified immunity motion at that time if they feel it is necesssary[4].

## IV. Conclusion

The motion for summary judgment (Dkt. 39) is granted in part and denied in part as follows:

The motion is granted as to the defendants Armstrong and Rodriguez in their individual and official capacities;

The motion is granted as to the claims for equitable relief against the defendant Jach D. Maleh, M.D.;

The motion is granted as to the claims for money damages against the defendants in their official capacities;

The motion is denied without prejudice as to the claims for

---

[4] If qualified immunity is raised as a defense in a renewed motion, the court may reconsider appointing counsel for the plaintiff, but that need not be decided on this record. In any event, the court would appreciate a more detailed analysis of the cases on qualified immunity than has been provided to date.

monetary damages against the Defendants Maleh, Cooper, Jane Doe, and John Doe in their individual capacities;

The motion is denied without prejudice as to the claims for equitable relief against the defendants Cooper, Jane Doe, and John Doe.[5]

Dated at Hartford, Connecticut, October 5, 2005.

/s/ Thomas P. Smith
Thomas P. Smith
United States District Court

---

[5] If the plaintiff is presently confined in an institution other than the institution where these defendants are now employed, the claims for injunctive relief may be moot.